IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

THOMAS D. PETTY                                                                                          PLAINTIFF

v.                                         CASE NO.        12-2102

CAROLYN W. COLVIN[1], Commissioner
of Social Security Administration                                                                       DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g)*.*

### I.  Procedural Background:

The plaintiff filed her applications for DIB and SSI on August 4, 2010, alleging an onset date of September 1, 2007, due to plaintiff's lower back, high blood pressure, depression, pain, and osteoarthritis.  Plaintiff's applications were denied initially and on reconsideration.  Plaintiff then requested an administrative hearing, which was held on June 2 , 2011.  Plaintiff was present and represented by counsel.

---

[1] Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

At the time of the administrative hearing, plaintiff was 46 years of age and possessed an 11th grade education. The Plaintiff had past relevant work ("PRW") experience as a carpenter. (T. 157).

On August 4, 2011, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's Hepatitis C, back disorder, hypertension, and depression did not meet or equal any Appendix 1 listing. T. 26. The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform light work with additional restrictions. T. 28. With the assistance of a vocational expert, the ALJ then determined Plaintiff could perform the requirements of representative occupation such as cashier and counter clerk. T. 32.

## II.  Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id*. As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

**A. RFC**

The ALJ found that the Plaintiff retained the Residual Functional Capacity to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally lift and carry items weighing 20 pounds and can frequently lift and carry items weighing 10 pounds; can stand and walk for about 6 hours out of an eight-hour workday and can sit for about 6 hours out of an eight-hour workday; can occasionally climb, balance, crawl, stoop, kneel, and crouch; can understand, remember, and carry-out simple, routine, and repetitive tasks; can respond appropriately to usual work situations; and can interact appropriately with supervisors, co-workers, and the general public. (T. 28).

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 citing Lauer v. Apfel, 245 F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

    1. Credibility

In determining a claimant's RFC, " 'the ALJ must first evaluate the claimant's credibility.'

" *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir.2007) (*quoting Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2002)). The ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, however, the Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above RFC (T. 28). Indeed the ALJ stated that the Plaintiff's "assertions regarding the severity of his limitations are so extremes as to appear implausible."  (T. 29). The Plaintiff contends that the ALJ erred in this assessment of the his credibility. (ECF No. 11, p. 11).

The ALJ must consider several factors when evaluating a claimant's subjective complaints of pain, including claimant's prior work record, observations by third parties, and observations of treating and examining physicians relating to 1) the claimant's daily activities; 2) the duration, frequency, and intensity of pain; 3) precipitating and aggravating factors; 4) dosage, effectiveness and side effects of medication; and 5) functional restrictions. *Casey*, 503 F.3d at 695 (8th Cir.2007) (citing *Polaski v. Heckler*, 729 F.2d 1320, 1322 (8th Cir.1984). The ALJ may discount subjective complaints when they are inconsistent with the evidence as a whole. Id. (citing Polaski, 739 F.2d at 1322). "The ALJ is not required to discuss each Polaski factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir.2004).

    a.  Work Record

The Plaintiff's work record is spotty at best.  While the Plaintiff contends that he became disabled in September 2007 (T. 119) his earnings records shows that he had -0- earnings in 2005, 2006 and 2007.  (T. 126).  He also only had less than SGA earnings in 2002-2004. (Id.).  *See*

*Wildman v. Astrue,* 596 F.3d 959, 968-69 (8th Cir. 2010) (ALJ may consider a claimant's sporadic work history when determining credibility).

    b.  Daily Activities

In Plaintiff's original Function Report, filed on August 17, 2010, he reported that he lived in a camper and that he cleaned it daily, sat outside, and performed yard work. Plaintiff reported that he prepared his own food, and did laundry chores, and had no difficulties with his personal care.  He further reported driving, shopping, paying bills, and being able to handle his finances (Tr. 175-178).  The Plaintiff contended in October 2010 that his condition worsened in September 2010 (T. 187) but his Disability Report stayed basically the same (T. 195-201) except that he now contended that he had difficulty in Concentration and Completing Tasks (T. 202).

These activities do not support plaintiff's claim of disability.  *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor).

    c.  Functional Restrictions

Plaintiff testified that he could not work because of sores on his hands and that his hands swell. However, he also testified that he worked about 6 months at Granite Construction not citing the claims about his hands and only stating that he "could not keep up" with the younger

workers. (Tr. 46-47). The social security records disclosed that the Plaintiff earned $1,740 in 2009. (T. 130). It also appears that the Plaintiff was self employed during the time after alleged disability doing "handyman service" for various people. (T. 47). During his testimony the Plaintiff acknowledged that his wife was working during the time he was "trying to start my handyman service then and I was just taking on odd jobs" (T. 48). *See Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir.2005) (holding that working after the onset of an impairment is some evidence of an ability to work).

"If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination." *Gregg v. Barnhart*, 354 F.3d at 714 (Iowa, 2003); *Human v. Barnhart*, 2006 WL 2422182, 3 (D.Kan.) (D.Kan.,2006). In this case the court believes that the ALJ properly discounted the credibility of the Plaintiff.

### 2.  RFC Assessment

An MRI performed in 2003 revealed slight grade I degenerative anterolisthesis of L5 on S1; degeneration and diffuse bulges involving L3-4 and L5 on S1 (Tr. 410-411). In addition, moderate central bilateral neural foraminal stenosis was noted at L3-4 and similar mild to moderate foraminal stenosis at L4-5 (Tr. 410-411). The MRI revealed mild bilateral neural foraminal stenosis at L5-S1 and no focal protrusion or extrusion of disk material identified (Tr. 410-411).

An x-ray performed on December 9, 2009, revealed degenerative changes of the lumbosacral spine with vascular calcifications of the aorta. No acute bony lesions were identified (Tr. 403). The study exhibited disc space narrowing at L5-S1 with anterior spurring at that level. Some sclerosis was present at the posterior elements of L5-S1 from prominent facet hypertrophy.

Vertebral body heights were maintained and his pedicles were intact. Some anterior spurring was noted along with disc space narrowing at L3-4 (Tr. 403). Finally, a congenital anomaly was noted at S1 (Tr. 403).

Dr. Petty, a non-examining physician, rendered a Physical RFC Assessment on September 10, 2010 finding that the Plaintiff could occasionally lift 50 pounds and frequently lift 25 pounds. That he could stand and/or walk and sit for six hour in an 8-hour day and that he had no limitations on his ability to push and/or pull. (T. 346). Dr. Petty also found that the plaintiff had some limitations in his ability to stoop and crawl. (T. 347). Dr. Petty specifically noted that there was no Medical Source Statement in the record. (T. 351). Dr. Petty's findings were reviewed and affirmed by Dr. Bill Payne on December 10, 2010. (T. 361).

We have stated many times that the results of a non-examining evaluation does not constitute substantial evidence on which the ALJ can permissibly base his decision. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999) (holding that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence). This is especially true when the consultative physician is the only examining doctor to contradict the treating physician. Id.; *Cox v. Barnhart* 345 F.3d 606, 610 (C.A.8 (Ark.),2003).

The ALJ stated that the "State agency medical consultant's physical assessment is given **little weight** because evidence received at the hearing level shows that the claimant is more limited than determined by the State agency consultant. Furthermore, the undersigned finds that the State agency consultant did not adequately consider the claimant's subjective complaints (Exhibits 7F & 10F.)". (T. 31).

The ALJ than states that he "affords substantial weight to the opinions rendered by the

claimant's treating physicians with the exception of the opinion of George Howell, M.D."
(Exhibits 1F, 2F, 3F, 4F, 5F, 8F, l2F, & l4F.)". (Id.).

Dr. Howell was the Plaintiff's treating physician and had treated him from September 7, 2010 (T. 423) but the Plaintiff had been seen at Dr. Howell's clinic (The Wellness Clinic) as early as June 2008 for back pain and medication. (T. 366). Dr. Howell provided a MSS on February 18, 2011 and stated that the Plaintiff had chronic lower back pain with neuropathy of the lower extremities. He felt that the Plaintiff could only sit for 2 hours during an 8 hour work day and could stand and/or walk for 4 hours during an 8 hour work day.  He also could never crouch and only occasionally bend, squat, crawl, climb or kneel. (T. 423).  He also felt that he would have to take unscheduled breaks, miss more than 4 days per month, elevate his feet during work, and would need a "sit/stand/walk" option. (T. 424).

Under the Social Security regulations, the amount of weight given to a non-controlling medical opinion is determined by applying the following factors: (1) whether the source has examined the claimant; (2) the length, nature, and extent of the treatment relationship and the frequency of examination; (3) the extent to which the relevant evidence, "particularly medical signs and laboratory findings," supports the opinion; (4) the extent to which the opinion is consistent with the record as a whole; (5) whether the opinion is related to the source's area of specialty; and (6) other factors "which tend to support or contradict the opinion." 20 C.F.R. §§ 404.1527(d), 416.927(d); *See Owen v. Astrue* 551 F.3d 792, 800 (C.A.8 (Iowa),2008) *citing Wagner*, 499 F.3d at 848.

The ALJ discounts the MSS of the Plaintiff's treating physician stating that " Dr. Howell's assessment of the severity of the claimant's symptoms and limitations is inconsistent

with the claimant's admitted activities and with the other medical evidence and opinions of record. In addition, the undersigned finds that Dr. Howell's opinions are quite conclusory as there is little explanation of the evidence relied upon in forming his opinions." (T. 31). No where in Dr. Howell's treatment of the Plaintiff does Dr. Howell ever perform any substantive test upon the Plaintiff. *See Halverson v. Astrue*, 600 F.3d 922, 929-30 (8th Cir. 2010) (explaining that "[w]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight" (internal quotation marks and citation omitted)); *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (holding that the ALJ properly discounted the treating physician's opinion that consisted of three checklist forms, cited no medical evidence, and provided little to no elaboration); *Reed v. Barnhart*, 399 F.3d 917, 921 (8th Cir. 2005) (recognizing that "[w]e have upheld an ALJ's decision to discount a treating physician's [medical source statement] where the limitations listed on the form stand alone, and were never mentioned in [the physician's] numerous records o[f] treatment nor supported by any objective testing or reasoning" (first and second alterations added) (internal quotation marks and citation omitted)). It is proper for the ALJ to decline to give weight to the vague, conclusory, and unsupported opinions of the treating physician. *See Brown v. Astrue*, 611 F.3d 941, 952 (8th Cir. 2010).

  The problem that the court sees is that none of the other treating physicians that the Plaintiff has seen has given any assessment on the Plaintiff's ability to perform work. Dr. Hutchinson in 2002 found that the Plaintiff had pain across the lumbosacral region fairly diffusely, decreased range of motion, but normal sensory/motor/reflex examination. (T. 232). As the ALJ noted the MRI showed slight Grade 1 Degenerative Anterolisthesis of L5 on S1,

degeneration and diffuse bulges involve the L3-4 through L5-S1, moderate central and bilateral neural foraminal stenoses at L3-4, mild central and moderate bilateral neural foraminal stenoses at L4-5, mild bilateral neural foraminal stenoses at L5-S1, but no focal protrusion or extrusion of disk material. (T. 232-233).

The Plaintiff was incarcerated in 2008 and a note in his medical file states the his "DTR's 2+ equal achilles & patella moves on & off exam table with ease, able to squat walk & recover well, and lumbar flexion to 80 degrees without pain." (T. 255). Regardless the Arkansas Department of Correction diagnosed the Plaintiff with DJD and placed him on restrictions. (T. 256).

While these facts may provide some basis for the ALJ to discount the opinion of Dr. Howell they are not enough in and of themselves to establish the Plaintiff's RFC.  *See Pate-Fires v. Astrue*, 564 F.3d 935 (8th Cir. 2009) (quoting *Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) ("A treating doctor's silence on the claimant's work capacity does not constitute substantial evidence supporting ALJ's functional capacity determination when the doctor was not asked to express an opinion on the matter and did not do so, particularly when that doctor did not discharge the claimant from treatment.").  It is incumbent upon the ALJ to establish by medical evidence that the claimant has the requisite RFC.  If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record. *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984).

If the ALJ was going to discount the opinion of the non-examining medical doctor and the treating physician he should then obtain a MSS where the Plaintiff's physical abilities are

subjectively measured and get the opinion of a consulting examination. There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis. *Battles v. Shalala*, 36 F.3d 43 at 45 (C.A.8 (Ark.), 1994). In this instance the court believes that remand is necessary to obtain a consultive examination to determine the plaintiff's capability to perform work.

## IV. Conclusion:

Accordingly, the court finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration.

Dated this June 19, 2013.

/s/ *J. Marschewski*
HONORABLE JAMES R. MARSCHEWSKI
CHIEF U. S. MAGISTRATE JUDGE